Nov. Term,
1849.

DOE
v.
FLAGLER.

Doe on the Demise of STRONG and Another *v.* FLAGLER.

The statute of 1843, requiring the county auditor to make out a list of all lands returned or remaining delinquent for non-payment of taxes, on the first day of *October,* annually, also requires the publication of the same, together with a notice of sale, immediately thereafter, for four weeks successively, in some newspaper in the county having general circulation; and a publication of such list and notice fifty days thereafter is not a compliance with this statute, and a sale of land under such notice is void.

*Thursday,*
*December 6.*

APPEAL from the *Vanderburg* Circuit Court.

SMITH, J.—This was an action of ejectment for two lots, Nos. 19 and 20, in block No. 35, in the city of *Evansville.* Upon the trial the defendant was found not guilty as to lot No. 19, and guilty as to lot No. 20. A motion made by the plaintiff for a new trial was overruled, and this writ of error was prosecuted to reverse the finding and judgment of the Court as to the said lot No. 19.

The plaintiff proved, upon the trial, that *David E. A Strong,* one of his lessors, was seized in fee of the lot in controversy on the 25th of *August,* 1842.

The defendant, to show title in himself, then produced a deed from the auditor of *Vanderburg* county, conveying said lot to him under a sale for taxes. The recitals of this deed, averred that said lot was sold on the 6th of *January,* 1846, to one *Henry J. Hart* for 15 dollars and 50 cents—that being the amount due on certain lots or tracts of land returned delinquent, in the name of *D. E. A. Strong,* for the years 1844 and 1845—and that a certificate of purchase had been given by the county auditor to said *Hart,* which certificate had been duly assigned to *Flagler,* &c.

The plaintiff then endeavored to impeach this deed, by evidence introduced to show that the lot was not advertised and sold at the time, and in the manner required by law in cases of sales of lands for the payment of taxes, and that, consequently, no title passed to the purchaser by the auditor's deed. One of the alleged irregularities in the proceedings was, that the list of delinquent lands

and notice of sale was not published at the time desig-
nated by the statute.

The 89th section of c. 12, R. S. p. 224, provides that
the county auditor shall, on the first day of *October*,
annually, make out and record a list of all lands returned
or remaining delinquent for the non-payment of taxes,
and by the 90th section of the same chapter, the same
officer is required to cause a copy of such list to be
immediately published for four weeks successively, once
in each week, in some newspaper having general circula-
tion in his county, if any there be, or otherwise, by three
copies posted up in public places in each township in his
county, to which shall be attached, and in like manner
published, a notice that so much of said lands as may
be necessary to discharge the taxes with the interest and
charges due thereon, will be sold at public auction at the
court house in such county, on the first Monday in
*January* next thereafter.

It appeared, that in this case, the publication of the
copy of the delinquent list, and the notice of sale thus
required, was not made until the 20th of *November*,
1845, when said list and notice of sale of lands returned
and remaining delinquent for that year, including the lot
in controversy, was, for the first time, published in the
"*Evansville Journal*" of that date. In this first publication,
in consequence of a typographical error, two of the lots
assessed to *Strong*, neither of which, however, was the
lot in controversy, were misdescribed. The error was
afterwards corrected, and a correct list, with the notice of
sale, was published on the 27th of *November*, and on the
4th, 11th, and 17th of *December*.

It is contended by the defendant, that the publication
made was a substantial compliance with the requirements
of the statute—such publication having, in fact, been made
four successive weeks before the day of sale. His counsel
say, in support of this position, that the object of ad-
vertising is to bring bidders to the sale, and that this
purpose is better accomplished by a notice published
shortly before the day of sale, than by one published a

Nov. Term,
1849.

SHOULTY
v.
MILLER.

longer time in advance. But it is not our province to determine at what time such a publication should be made, so as best to answer the purposes for which such notices are usually given; we have simply to decide whether the publication was, in this instance, made at the time required by the existing statute on the subject; besides, it may be said, that one object of the publication is to give notice to the owners of lands returned delinquent that such lands will be sold unless the taxes should be paid before a certain day. The statute requires such publication to be made *immediately* after the first day of *October*, and giving the words used their ordinary sense and meaning, we can come to no other conclusion, than that the legislature meant to say the list and notice should be published as soon after that day as such publication could reasonably be effected. The statute does not say the publication shall be made four weeks before the day of sale, but it is peremptory that it shall be made immediately after the first day of *October*. We think, therefore, that a publication made, as in this case, fifty days after the time required, no reason having been shown for the delay, was not a compliance with the statute, and that the sale of the lot in controversy, under the notice thus given, was, consequently, void.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*C. Baker*, for the appellant.

*A. L. Robinson* and *J. G. Jones*, for the appellee.